## AFFIDAVIT OF VA OIG SPECIAL AGENT MICHAEL NUNLEY

I, Special Agent Michael Nunley, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the U.S. Department of Veterans Affairs ("VA"), Office of Inspector General ("OIG"), and have been so employed since July of 2023. Prior to employment with VA-OIG, I was employed as a Special Agent with the Treasury Inspector General for Tax Administration ("TIGTA"), Department of Homeland Security ("DHS"), Immigration and Customs Enforcement, Homeland Security Investigations ("ICE-HSI"). In preparation for this assignment, and as part of my continued education, I have successfully completed law enforcement and financial crimes focused training, including formal courses and training exercises. I have participated in many aspects of federal investigations including, but not limited to: subject, victim, and witness interviews; analysis of telephone and financial records; and assisting with the preparation and execution of arrest and/or search warrants. As a federal agent, I am authorized to investigate violations of the laws of the United States. As a law enforcement officer, I am authorized to execute warrants issued under the authority of the United States.

2. During my law enforcement career, I have participated in investigations involving threatening communications.

3. As described below, there is probable cause to believe that PAUL MICHAEL GANGI (DOB: xx/xx/1979) committed a violation of federal law, specifically Title 18 U.S.C. § 115 (Influencing, Impeding, or Retaliating Against a Federal

1

Official by Threatening), hereinafter referred to as the SUBJECT OFFENSE. Federal employees are further defined under 18 U.S.C. § 1114.

4. I am aware, based on my training and experience, that Title 18, United States Code, Section 115 makes it a federal offense for any person to threaten to assault, kidnap, or murder an employee of any branch of the United States Government on account of their duties. Section 115 also makes it a federal offense for any person to threaten to assault, kidnap, or murder a member of the immediate family of any officer or employee of the United States Government on account of that employee or officer's duties.

5. I submit this affidavit in support of a criminal complaint charging GANGI with having communicated an interstate threat to kill or harm employees of the Department of Veterans Affairs (VA), Veterans Health Administration (VHA).

6. The statements contained in this affidavit are based on my participation in this investigation and conversations with other law enforcement officers involved in the investigation. This affidavit is submitted for the limited purpose of establishing probable cause to believe that GANGI violated 18 U.S.C. § 115. It therefore does not set forth all the information that I and other law enforcement personnel have obtained during the course of the investigation.

7. I have anonymized the names of the witnesses and victims referenced in this affidavit. I know the identities of the individuals referenced in this affidavit—Person 1, Person 2, Person 3, Person 4, Victim 1 and Victim 2 – and have

personally spoken to Person 2, Person 3, Person 4, Victim 1 and Victim 2 during this investigation.

## GANGI'S BACKGROUND

8. GANGI served in the United States Army from 1999 to 2007 as an enlisted soldier in active/reserve status. GANGI served as a Cavalry Scout (Military Occupational Specialty 19D10). GANGI completed the U.S. Army 15-week Cavalry Scout Course and the Corrections Specialist Mobile Training Team Course. GANGI served in Iraq in approximately 2004-2005 and earned The Army Commendation Medal, among other awards and decorations.

9. After leaving the U.S. Army, GANGI gained employment with the VBA in Manchester, NH, where he has been employed for approximately 13 years as a Carpenter. GANGI is currently a resident of Raymond, NH.

## GANGI COMMUNICATED A THREAT
## DURING A CONVERSATION WITH A CO-WORKER

10. In an in-person interview with law enforcement on September 6, 2024, Person 1, an employee at VHA, stated that on September 5, 2024, at approximately 2:00 p.m., GANGI came into the VAMC Manchester Electric Shop to borrow a band saw.

11. According to Person 1, when GANGI came into the shop, he seemed disgruntled and began telling Person 1 that he felt that he as being targeted by Victim 1 and Victim 2, two supervisory VHA employees. Person 1 stated that GANGI was venting about how he was relieved of his duties as a locksmith and had his keys

3

taken away. Person 1 further stated that GANGI complained that he should be getting paid more because he was doing two jobs. GANGI then continued to complain that he as being targeted and harassed and Victim 1 and Victim 2 were trying to get rid of him.

12. Person 1 stated that GANGI said, "If they keep harassing me, I am going to come in and pop these guys." Person 1 was concerned about this statement because Person 1 has known GANGI for a long time and believes him to have serious anger issues. Person 1 further stated that this statement concerned Person 1 as Person 1 knew from prior conversations that GANGI owns guns, had heard him talking about being a "doomsday prepper"[1] who had guns buried around his property, and that GANGI had referred to his house as a compound that he could protect. Person 1 further stated that GANGI has made similar threatening comments before to Person 1, that Person 1 believes that other employees are nervous, that GANGI needs help, and that when GANGI is at the VA, he is a "ticking time bomb." Person 1 stated he reported GANGI's comments to VHA supervisors after the morning meeting the next day.

13. In a follow up interview that same day, Person 1 submitted a voluntary written statement reporting GANGI's threat towards Victim 1 and Victim 2. Person 1

---

[1] According to *Wikipedia*, a doomsday prepper is an individual who proactively prepares "for emergencies, such as natural disasters, and other disasters causing disruption to social order (that is, civil disorder) caused by political or economic crisis." Survivalism, *Wikipedia*, *available at* *https://en.wikipedia.org/wiki/Survivalism*. The individual will emphasize "self-reliance, stockpiling supplies, and gaining survival knowledge and skills. The stockpiling of supplies is itself a wide spectrum, from survival kits (ready bags, but-out bags) to entire bunkers in extreme cases." *Id.*

4

stated that Person 1 understood "pop" meant GANGI was going to shoot both of them (Victim 1 and Victim 2). Person 1 further confirmed that GANGI has access to firearms, writing that GANGI "said he does. He has showed me video of him and his son shooting."

14. I also reviewed a statement Person 1 made to HR as part of their investigation into the threat. In addition to the above, Person 1 added that "GANGI has said a bunch of stuff in the past regarding if he was going to shoot someone from the facility how he would do it. He has mentioned in the past that he would shoot from the tree line around the facility."

## LAW ENFORCEMENT INTERVIEW OF GANGI

15. On September 6, 2024, another VA Police Services Officer and I conducted an interview of GANGI. Prior to the interview, GANGI was informed that the interview was completely voluntary, he was not being detained, and that he was free to leave at any time.

16. GANGI was informed that there was a complaint made that he would hurt some of his supervisors. He was informed that the statements were made at approximately 2:00 p.m. on September 5, 2024. GANGI first stated that he did not recall threatening to shoot any supervisors and denied threatening to hurt any VA employee. GANGI then stated, "If I was going to do anything, it would not be on the facility property."

5

17. GANGI further stated, "I know I have a target on my back, [Victim 2] hates me just because of the way I carry myself. I have no idea why [Victim 2] hates me, I think it was passed down from the last regime, who fucking hated me. [Victim 2] hates me because [Victim 2] has a general perception. [Victim 2] is upper management and [Victim 2] doesn't like me, I don't know why to tell you the truth, I have done stellar work. I have some issues in my own head where I have had to take leave for a couple of days. [Victim 2] has it out for me, he walks around trying to find me being late on breaks, all sorts of weird shit, but it is what it is, I have seen these administrations come and go."

18. GANGI added that Victim 2 "has it out for me, you can ask anyone in here, he badmouths my work, he badmouths me, when he talks to me, he has an expression almost of discontent. It is borderline harassment."

19. GANGI was asked about his relationship with Victim 1. GANGI replied, "[Victim 1] is a fucking douchebag. I have had plenty of run-ins with [Victim 1]."

20. GANGI was asked if any words were ever said to Victim 1 that should not have been said, to which he replied, "I will tell [Victim 1] to stay away from me, back the hell away from me, you are not my direct supervisor. [Victim 1] has a tendency to come in and put [Victim 1's] two pieces into everything, [Victim 1] is very micromanaging… [Victim 1] will stand and watch you work and put input into your job the entire time and it's like, piss off. [Victim 1] put a bad taste in my mouth two years ago when they threw away my entire carpenter shop while I was on vacation after I told [Victim 1] not to touch anything. When I came back, I

6

had words with [Victim 1]. I went up one side and down the fucking other side. I never said I would hurt [Victim 1]. I never said I would kill [Victim 1]. I might have looked at [Victim 1] like I wanted to, and he might have felt that way. Sorry, grow a pair of balls."

21. GANGI was asked if [Victim 1] has said things to him that would make him feel harassed. GANGI expressed his feeling that Victim 1 "constantly" harasses him. GANGI said, "Would I hurt [Victim 1], no. I am a patient man, I would not hurt anyone here."

22. When asked about making a threat against Victim 2, as well as Victim 1, GANGI said, "I did, allegedly" then smirked. GANGI then denied making threatening statements. GANGI added that, "shit I don't even know if I was there for any of this, it seems like it was all just bullshit. Do I talk, ya absolutely, can I express my displeasure with management, absolutely. Management's been trying to fuck me. Fuck me hard. There's only so much one can do. But again, would I threaten any of their lives, no. I'm Army Recon dude, you know better than that. If I wanted them dead, they would be dead. You know, it wouldn't be here. It's nothing like that, I just want to do my damn job."

23. GANGI was asked if he feels that both Victim 1 and 2 are harassing him. GANGI stated, "yes absolutely. On a regular basis" GANGI was asked if they were out to get him, and he stated, "they took away my lock shop for no reason. I have been the locksmith here for 10 years and without reason, without even an explanation, I was told to turn in my keys, vacate my lock shop, and they gave it to [another

7

employee], who has been here less than a year … Take this away, take that away, they are taking everything from me. They are actively trying to push me. They couldn't even give me a reason, other than that it's not in the [Position Description]."

24. I asked GANGI if he understood that any time there is an allegation like this, we have to look into it and GANGI cut me off stating, "Look into the allegation. Why was this said. You give me proof. If I did it I would tell you. Do I like them, no. Do I wish them dead, no. That is a lot to do and karma is a motherfucker. But do I care for any of them, no. Do I want them to back the fuck off, yes. One day, you could push somebody to that point. I do have PTSD. It is their job to support me, and you as a veteran. Not actively trying to trigger you so that they can fire you. And this just seems like another step in the process they are trying to pull with me."

25. When asked what they might do to push him, GANGI stated, "who the fuck knows? They are doing a pretty god damn good job of it now. They have taken everything from me. They have taken my dignity. They have taken my respect. They've taken my lock shop. I used to have an office, I used to have a computer, an extension, a phone, a wall with my tools. Now I sit in Building 6. In the Carpenter area, where everyone has eyes on me. Not a moment can I sit down without someone saying, hey, what are you doing, hey, why aren't you working? And it's constant. These guys are watching me, everything I do. I have a knot in my stomach when I get up, come in here every day. It never used to be that way.

8

I love this fucking facility. This is my hospital; this place saved my life. I take pride in it. But I've been shit on so much, and it's at every turn. 5 minutes late? They will put AWOL [absent without leave] on me so they can do paperwork on me."

## GANGI HAS THE MEANS AND TRAINING TO CARRY OUT THE THREAT

26. As discussed in paragraph seven, GANGI has combat experience and extensive training in combat arms. A review of GANGI's US Army Recommendation for Award dated December 3, 2004, his commanding officer wrote that GANGI [is a], "sharp shooter with a keen sense for tactics." In GANGI's Certificate of Release or Discharge From Active Duty after completion of his first full term of service, it states under Badges that GANGI received "expert marksmanship qualification badge with grenade bar // sharpshooter marksmanship qualification badge with automatic rifle bar."

27. As part of my investigation, I interviewed other VHA employees and reviewed reports from the VA Human Resources investigation into the threat made against Victims 1 and 2. During a review, multiple employees stated that they had heard GANGI make threats over the years, and multiple employees stated that from talking to GANGI, knew that he has guns.

28. During a law enforcement interview, on September 12, 2024, Person 2 stated that he has heard GANGI make comments in the past about killing people. Person 2 described GANGI as a loner, who was not trying to be part of the team despite

9

management's attempt to foster that atmosphere. Person 2 stated that approximately 2-3 months ago, GANGI's locksmith duties were taken away. After that event occurred, GANGI seemed very irritated. GANGI told Person 2 that "they were out to get him." GANGI told Person 2 approximately two months ago that "if he got fired, he would definitely kill people." Person 2 stated that when he heard these comments, he did not really want to get involved. Person 2 stated that a lot of times he believed GANGI he was just blowing off steam, but after hearing about this recent threat, Person 2 felt like it was more serious and maybe he was not taking it seriously enough at the time. Person 2 stated that he has seen GANGI watching gun videos at work.

29. During an interview with law enforcement on September 12, 2024, Person 3 stated that on at least two (2) occasions, approximately 6-8 months ago, GANGI told him "I'll shoot this fucking place up." Person 3 said the statements were made after discussions with supervisors. Person 3 also described GANGI as having a short temper. Person 3 further stated GANGI said he has an assault rifle and a revolver.

30. During a law enforcement interview on September 12, 2024, Person 4 stated that GANGI says "stupid things" sometimes, and that GANGI once said "I should take a gun to this place." Person 4 recalled that he believed that GANGI made this statement about previous management.  I understand that management changed approximately two (2) years ago so this statement was likely made at least two (2) years ago.

## INTERVIEWS WITH VICTIM 1 AND VICTIM 2

31. On September 12, 2024, another officer and I conducted an interview of Victim 1. Victim 1 stated that he has worked for VHA for approximately 12 years and has worked at VAMC Manchester for the last six (6) years. Victim 1 further stated that when he started in Manchester, he was a Maintenance Mechanic, and has worked as the Maintenance Mechanic Supervisor for approximately three years.

32. Victim 1 stated that he has known GANGI since GANGI started in Manchester approximately 13 years ago.

33. Before Victim 1 became a supervisor, Victim 1 recalled that sometime in 2021 GANGI stated that he kept a 10mm firearm in his truck, and Victim 1 told him that he would get in trouble for having a gun on the property. Victim 1 said he should have reported GANGI at that time but did not because Victim was an acting supervisor with no authority at the time.

34. Victim 1 explained that GANGI previously told Victim 1 that GANGI could "fix all these motherfuckers." Victim 1 understood GANGI to be referring to the previous administrators. Victim 1 stated he heard GANGI say it multiple times. Victim 1 stated he spoke to GANGI about it and told him that it could be actionable, and that GANGI needed to stop saying it. Victim 1 further stated that he interpreted the statement as a veiled threat. Victim 1 stated that GANGI made these statements during times when he was being disciplined.

35. Victim 1 further stated that he believed GANGI would do things to intimidate people, such as wearing colored contacts, snake eyes, flames, and different other things to intimidate people.

36. Victim 1 stated that prior to hearing about this recent threat, Victim 1 had never heard GANGI directly say anything threatening about a specific person. Victim 1 also reported that he heard from other employees, he could not remember who, that Victim 1 had talked about hiding in the tree line and picking off employees.

37. Since hearing about GANGI's threat against him, Victim 1 said that he has been looking at VA vulnerabilities with Victim 2. They have discussed bringing in a contractor to clear the tree lines around the campus and to establish PIV card access to lock down the shop doors. Victim 1 further stated that he is worried about his employees and his team, telling Victim 2 that "my belief is that he would not come here for just the two of us, once he starts pulling the trigger it is going to be a bloodbath." Victim 1 acknowledged that he felt threatened.

38. Continuing that same date, another officer and I conducted an interview of Victim 2. Victim 2 stated that he has been employed at VAMC Manchester for approximately two (2) years and is currently a Station Chief at the facility.

39. Victim 2 stated that he has not had many interactions with GANGI. Victim 2 estimated that in the two years he has worked here, he has said no more than 100 words to GANGI. Victim 2 stated that he has little interaction with GANGI as most of the interactions are conducted by mid-level managers.

40. Victim 2 stated that at some point, it became obvious that GANGI was abusing his locksmith position by handing out master keys. Victim 2 explained that there are multiple master keys on campus and likely came from GANGI. Victim 2 further stated that management is working on remedying the situation, but as part of the process, in approximately June of this year, they took away GANGI's locksmith duties. GANGI then filed a grievance to get his keys back and it was denied. During the meeting in approximately June of 2024, Victim 2 recalled that GANGI stated to him, "there is a target on my back." Victim 2 reiterated that it was the only personnel interaction that he had with GANGI.

41. When asked about how the threats GANGI made affected Victim 2 personally, Victim 2 said, among other things, that Victim 2 felt threatened and took steps to protect himself, including by buying security cameras for his house.

## CONCLUSION

42. Based on these facts, I submit there is probable cause to believe that Paul GANGI knowingly threatened employees of the United States Government on account of their duties in violation of 18 U.S.C. § 115.

43. I declare the foregoing is true and correct to the best of my knowledge and belief.

*/s/ Michael G. Nunley*
MICHAEL G. NUNLEY
SPECIAL AGENT, VA OIG

Subscribed and sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on this 21st day of September, 2024.

_____
HON. TALESHA SAINT-MARC
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF NEW HAMPSHIRE